# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
04/26/2021
CT Log Number 539445450

**TO:** Peggy Steinman
X.L. America, Inc.
505 EAGLEVIEW BLVD STE 100
EXTON, PA 19341-1199

**RE:** **Process Served in Utah**

**FOR:** Catlin Specialty Insurance Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOHN C. HEATH, etc. and CREDITREPAIR.COM, INC., Pltfs. vs. CATLIN SPECIALTY INSURANCE COMPANY and INDIAN HARBOR INSURANCE COMPANY, Dfts. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint |
| **COURT/AGENCY:** | Third District Court, Salt Lake County, Salt Lake Department, UT Case # 210900516 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Midvale, UT |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 04/26/2021 postmarked on 04/22/2021 |
| **JURISDICTION SERVED :** | Utah |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service of this Summons upon you |
| **ATTORNEY(S) / SENDER(S):** | Mark E. Miller MILLER FRIEL, PLLC 2445 M Street, N.W., Suite 910 Washington, DC 20037 202-760-3160 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/26/2021, Expected Purge Date: 05/01/2021 |
| | Image SOP |
| | Email Notification,  Peggy Steinman  peggy.steinman@axaxl.com |
| | Email Notification,  Kimberly Rigoroso  kimberly.rigoroso@axaxl.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System 1108 E. South Union Avenue Midvale, UT 84047 |
| | 877-564-7529 MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other

 CT Corporation

**Service of Process Transmittal**
04/26/2021
CT Log Number 539445450

**TO:**    Peggy Steinman
X.L. America, Inc.
505 EAGLEVIEW BLVD STE 100
EXTON, PA 19341-1199

**RE:**    **Process Served in Utah**

**FOR:**    Catlin Specialty Insurance Company  (Domestic State: DE)

advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# State of Utah
**DEPARTMENT OF INSURANCE**

State Office Building, Room 3110
PO Box 146901
Salt Lake City, Utah 84114-6901

RETURN SERVICE REQUESTED



CERTIFIED MAIL

7015 1520 0001 3219 8092

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

FIRST CLASS

U.S. POSTAGE >> PITNEY BOWES

ZIP 84116  $ 008.45⁰
02 1W
0001403432 APR 22 2021

Catlin Specialty Insurance Co
CT Corporation System
1108 E South Union Ave
Midvale UT 84047



**Insurance Department**

JONATHAN T. PIKE
*Insurance Commissioner*

**State of Utah**

SPENCER J. COX
*Governor*

DEIDRE M. HENDERSON
*Lieutenant Governor*

April 20, 2021

Catlin Specialty Insurance Co.
CT Corporation System
1108 E South Union Ave
Midvale, UT 84047

Re: <u>Heath, et al. v. Catlin Specialty Insurance Co., et al.</u>

Dear Registered Agent for Service of Process:

The enclosed summons and complaint are being sent to you via certified mail pursuant to Utah
Code §§ 31A-2-309, -310.

Sincerely,

Reed Stringham
Deputy Utah Insurance Commissioner

George Hofmann (10005)
Joshua K. Peterman (10248)
Cohne Kinghorn, P.C.
111 East Broadway, 11th floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Fax: (801) 363-4378
ghofmann@ck.law
josh@ck.law

Mark E. Miller (*pro hac vice forthcoming*)
Tab R. Turano (*pro hac vice forthcoming*)
MILLER FRIEL, PLLC
2445 M Street, N.W., Suite 910
Washington, D.C. 20037
Telephone: (202) 760-3160
Fax: (202) 459-9537
millerm@millerfriel.com
turanot@millerfriel.com

*Attorneys for Plaintiffs*

---

## THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **JOHN C. HEATH, ATTORNEY AT LAW, PC d/b/a LEXINGTON LAW FIRM, and CREDITREPAIR.COM, INC.,** | **SUMMONS** |
| **Plaintiffs,** | |
| v. | |
| **CATLIN SPECIALTY INSURANCE COMPANY, and INDIAN HARBOR INSURANCE COMPANY,** | **CASE NO. 210900516** |
| | **JUDGE Andrew H. Stone** |
| **Defendants.** | **Discovery Tier 3** |

THE STATE OF UTAH TO THE ABOVE-NAMED DEFENDANT, INDIAN HARBOR

INSURANCE COMPANY:

YOU ARE HEREBY SUMMONED and required to file an Answer in writing to the

attached Complaint with the clerk of the Third Judicial District Court of Salt Lake County, Scott

M. Matheson Courthouse, 450 South State, Salt Lake City, Utah 84111 and to mail to or serve

upon: (i) George Hofmann, of and for Cohne Kinghorn, P.C., 111 East Broadway, Suite 1100,

Salt Lake City, Utah 84111, and (ii) Mark E. Miller, Miller Freil, 2445 M Street, Suite 910,

Washington, DC  20037, a copy of your Answer within twenty-one (21) days after service of this

Summons upon you.

If you fail to do so, judgment by default will be taken against you for the relief demanded

in the Complaint which has been filed with the above-entitled Court and a copy of which is

hereto annexed and herewith served upon you.

DATED this 14th day of April, 2020.

COHNE KINGHORN, P.C.

By:    /s/ George Hofmann
        George Hofmann
        Joshua K. Peterman
        111 East Broadway, 11th floor
        Salt Lake City, UT 84111
        Telephone: (801) 363-4300
        Fax: (801) 363-4378

MILLER FRIEL, PLLC

By:    /s/ Mark E. Miller
        Mark E. Miller (*pro hac vice* admission)
        Tab R. Turano (*pro hac vice* admission)
        2445 M Street, Suite 910
        Washington, DC  20037
        Tel: (202) 760-3160
        Fax: (202) 459-9537

SERVE DEFENDANT:

INDIAN HARBOR INSURANCE COMPANY
Utah Insurance Department
Jonathan T. Pike, Acting Commissioner
4315 South 2700 West
Suite 2300
Taylorsville, UT 84129

**Instructions for Service of First and Second Policies**:

The following service of suit provision is added and replaces any other Service of Suit provision contained elsewhere in this policy:

The Superintendent, Commissioner or Director of Insurance of the State is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

**National Registered Agents, Inc.**
**395 W. 2900 N.**
**Pleasant Grove, UT 84062**

as its agent to whom such process shall be forwarded by the Director of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

**Instructions for Service of Third Policy**:

---

**SERVICE OF PROCESS**

The Commissioner of Insurance and Lieutenant Governor of the State of Utah are hereby designated the true and lawful agents of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in Utah to whom such process shall be forwarded by the Commissioner of Insurance or Lieutenant Governor.

---

George Hofmann (10005)
Joshua K. Peterman (10248)
Cohne Kinghorn, P.C.
111 East Broadway, 11th floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Fax: (801) 363-4378
ghofmann@ck.law
josh@ck.law

Mark E. Miller (*pro hac vice forthcoming*)
Tab R. Turano (*pro hac vice forthcoming*)
MILLER FRIEL, PLLC
2445 M Street, N.W., Suite 910
Washington, D.C. 20037
Telephone: (202) 760-3160
Fax: (202) 459-9537
millerm@millerfriel.com
turanot@millerfriel.com

*Attorneys for Plaintiffs*

---

## THE THIRD JUDICIAL DISTRICT COURT

## IN AND FOR SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **JOHN C. HEATH, ATTORNEY AT LAW, PC d/b/a LEXINGTON LAW FIRM, and CREDITREPAIR.COM, INC.,** | **COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BAD FAITH** |
| **Plaintiffs,** | **CASE NO.  210900516** |
| **v.** | **JUDGE:  Andrew H. Stone** |
| **CATLIN SPECIALTY INSURANCE COMPANY,  and INDIAN HARBOR INSURANCE COMPANY,** | **Discovery Tier 3** |
| **Defendants.** | |

{00537401.DOCX /}

Plaintiffs John C. Health, Attorney at Law, PC d/b/a Lexington Law Firm ("Lexington Law") and CreditRepair.Com, Inc. ("CreditRepair.com") (together, "Insureds"), by and through their undersigned counsel, for this Complaint against Catlin Specialty Insurance Company ("Catlin") and Indian Harbor Insurance Company ("Indian Harbor") (together, "AXA XL"), allege as follows:

## PRELIMINARY STATEMENT

1.      In this action, Insureds seek to recover attorneys' fees and costs incurred in defense of a governmental claim and two civil lawsuits under a series of professional liability policies sold to them by AXA XL.

2.      There is no dispute between the parties that the lawsuits – each of which remains pending as of the date of this Complaint -- potentially trigger coverage under the AXA XL policies and that as a result, AXA XL has a contractual duty to defend the Insureds in connection with the actions.

3.      But AXA XL has not defended Lexington Law or CreditRepair.com.  Instead, AXA XL did nothing.  It failed to timely respond to the Insureds' requests to retain counsel to defend against the actions and ignored the Insureds' offers to provide updates regarding the pending matters or to put AXA XL in touch with retained defense counsel to discuss the defense.

4.      Now AXA XL contends that all of the defense costs incurred to date by Lexington Law and CreditRepair.com are at the Insureds' "personal cost," and has refused to reimburse the Insureds for so much as a dollar of their defense expenses.

5.      As a result, Lexington Law and CreditRepair.com have been forced to pay for their defense of the matters out-of-pocket and without the aid and assistance of their insurance carriers. Lexington Law and CreditRepair.com therefore bring this action for declaratory judgment, breach

of contract, and breach of the duty of good faith and fair dealing, to force AXA XL to abide by its acknowledged duty to defend their policyholders against the pending underlying actions.

## PARTIES

6.      Plaintiff Lexington Law is law firm and a Utah professional corporation with its principal place of business in Salt Lake City, Utah.  Lexington Law provides legal services, including credit repair services, for its clients.

7.      CreditRepair.com is a Florida corporation with its principal place of busines in Salt Lake City, Utah.  CreditRepair.com provides direct-to-consumer credit repair services.

8.      Upon information and belief, defendant Catlin Specialty Insurance Company is incorporated under the laws of Delaware with its principal place of business in Georgia.

9.      Upon information and belief, defendant Indian Harbor Insurance Company is incorporated under the laws of South Dakota, with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this dispute pursuant to Utah Code Ann. §§ 78A-5-102, 78B-3-205, and 78B-6-401.

11.      This Court has personal jurisdiction over the parties in dispute.

12.      Venue in this Court is proper pursuant to Utah Code Ann. §§ 78B-3-304 and 78B-3-307 because among other things, AXA XL conducted activity in Salt Lake County that gave rise to the claims, AXA XL failed to perform its obligations under the insurance policies at issue in whole or in part Salt Lake County, and the causes of action at issue in this dispute arose in whole or in part in Salt Lake County.

## FACTS

**I.      The Consumer Financial Protection Bureau Claim**

13.      On October 3, 2014, the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") served Lexington Law with a Civil Investigative Demand ("CID").

14.      On September 13, 2017, following Lexington Law's responses to the CID, the CFPB issued a Notice and Opportunity to Respond ("NORA") to Lexington Law.  The NORA indicated that the CFPB's Office of Enforcement was recommending that the Bureau take legal action against Lexington Law, and offered Lexington Law the opportunity to make a NORA submission setting forth the reasons why legal action should not be brought against the law firm.

15.      The following day, September 14, 2017, the CFPB issued a similar NORA to Progrexion Holdings, Inc. and its subsidiaries ("Progrexion"), including CreditRepair.com.

16.      Both Lexington Law and CreditRepair.com responded to the CFPB's allegations.

17.      On May 2, 2019, the Bureau filed a complaint against Lexington Law and several Progrexion entities, including CreditRepair.com, styled *Bureau of Consumer Financial Protection v. Progrexion Marketing, Inc., et al.*, Case No. 2:19-cv-00298-DBP (D. Utah) (the "*CFPB* Lawsuit").

18.      Count I of the *CFPB* Lawsuit asserts a claim against each of the defendants, including Lexington Law and CreditRepair.com, for violation of the Telemarketing Sales Rule ("TSR").

19.      Counts II through V of the complaint assert causes of action against the "Progrexion Defendants," including CreditRepair.com, relating to allegedly deceptive marketing practices in rendering credit repair services in violation of the Consumer Financial Protection Act and the TSR.

20.     The *CFPB* Lawsuit seeks, among other relief, payment of monetary damages, an award of civil monetary penalties, and fees and costs incurred by the Bureau in bringing the suit.

21.     As of the date of this Complaint, the *CFPB* Lawsuit remains in pre-trial discovery, and a pre-trial conference has been scheduled for November 5, 2021.

22.     The CID, NORA, and *CFPB* Lawsuit are collectively referred to as the "CFPB Claim."

## II.     The Creditor Claims

23.     Lexington Law was named a defendant in two lawsuits brought by debt collection agencies, styled *CBE Group, Inc., et al. v. Lexington Law Firm*, No. DC-17-00708 (Dist. Ct., 44th Jud. Dist., Dallas County, Tx.) ("*CBE Group*") and *Ad Astra Recovery Services, Inc. v. John Clifford Heath, Esq., et al.*, No. 6:18-cv-01145-JWB-KGS (D. Kan.) ("*Ad Astra*").  *CBE Group* and *Ad Astra* may be referred to collectively as the "Creditor Claims."

24.     *CBE Group* was filed against Lexington Law on July 14, 2017.

25.     CBE Group – a debt collection agency – asserts that Lexington Law has drafted and mailed "hundreds of thousands of pieces of frivolous dispute correspondence, purportedly from consumers, on behalf of consumers and without the consumers' specific knowledge or consent."  As a result, the complaint alleges that CBE Group has incurred significant costs and expenses to investigate and respond to the "frivolous dispute correspondences."

26.     *CBE Group* went to trial in June and July 2019.  The Court granted Lexington Law's motion for judgment as a matter of law pursuant to Rule 50(b), and judgment was entered by the court in Lexington Law's favor.  All claims against Lexington Law were dismissed.  As of the date of this Complaint, *CBE Group* is pending on appeal before the Fifth Circuit Court of Appeals.

27.     *Ad* Astra was filed on May 21, 2018, against Lexington Law, certain Progrexion

entities, and various associated individuals.

28.     *Ad Astra* asserts that defendants "solicit financially troubled consumers" by

offering legal services from Lexington Law, a law firm.

29.     Ad Astra, a debt collection agency, contends that Lexington Law then engages in

a credit repair scheme that involves sending "false credit dispute letters" intended to impede Ad

Astra's efforts to collect legitimate debts, and that as a result, Ad Astra has suffered damages.

30.     Ad Astra seeks, among other relief, compensatory and punitive damages,

attorneys' fees and costs, and pre- and post-judgment interest.

31.     As of the date of this Complaint, discovery has been completed in *Ad Astra*, and

defendants, including Lexington Law, have moved for summary judgment seeking dismissal of

Ad Astra's claims.  A trial date has been tentatively set for May 2021.

**III.     The Insurance Policies**

32.     AXA XL sold to Lexington Law and CreditRepair.com a series of professional

liability insurance policies.

*A.     The 2014 Lexington Law Policy*

33.     Catlin sold Lexington Law Lawyers Professional Liability Insurance Policy No.

LPP-196619-0714, for the period of July 14, 2014 to July 14, 2015 (the "2014 Lexington Law

Policy").

34.     The 2014 Lexington Law Policy provides a $5 limit of liability for each **Claim**,[1]

subject to a $5 million aggregate limit of liability.

---

[1] **Bold** terms are defined by the Policies.

35.     Catlin "has the right and duty to defend any **Claim** to which [the Policy] applies, even of the allegations of the **Claim** are groundless, false or fraudulent."

36.     The policy provides:

If during the **Policy Period**, the **Insureds** become aware of a specific act or omission, which reasonably may be expected to give rise to a **Claim** against an **Insured**, and give written notice to the **Insurer** of the specific act or omission, the reasons for anticipating such a **Claim**, the identities of the potential claimants and the **Insureds** allegedly responsible for such specific act or omission, the amount of actual or potential damages, and the circumstances by which the **Insureds** first became aware of such specific act or omission, then any **Claim** subsequently made or proceeding subsequently brought against the **Insureds** arising out of such specific act or omission, shall be deemed to have been made at the time such notice was received by the **Insurer**.

37.     Further:

[A]ll **Claims** based upon or arising out of the same act or omission or out of **Interrelated Acts or Omissions** shall be considered a single **Claim**, and each such single **Claim** shall be deemed to have been made on the earlier of the following:

A.      when the earliest **Claim** arising out of such act or omission or **Interrelated Act or Omission** first was made; or,

B.      when notice pursuant to Section VII.B, herein, of a fact, circumstance, or situation giving rise to such **Claim** was given.

38.     **Interrelated Acts or Omissions** means any acts or omissions that are "similar, repeated or continuous" or "connected by reason of any common facts, circumstances, situation, transaction, casualty, event, decision or policy or one or more series of facts, circumstances, situations, transactions, casualties, events, decisions or policies."

39.     The 2014 Lexington Policy contains a Sublimit for Damages Arising From Statutory Violations Endorsement (the "Fines and Penalties Endorsement").

40.     The Fines and Penalties Endorsement expands the policy's definition of **Damages** to include **Fines/Penalties Damages**, which is defined in turn as "fines and/or penalties arising

directly out of actual or alleged violations of certain identified statutes and regulations, including (a) the Credit Repair Organizations Act, (b) the Fair Debt Collections Practices Act, (c) the Fair Credit Reporting Act, (d) the Telephone Consumer Protection Act of 1991, and (e) the Telemarketing Sales Rule.

41.      The Fines and Penalties Endorsement provides that "the **Insurer's** maximum limit of liability for all **Fines/Penalties Damages** arising from a **Claim** . . . is $2,000,000.

42.      The $2,000,000 Fines and Penalties Endorsement limit does not apply to defense costs; nor does it apply to **Damages** not described by the definition of **Fines/Penalties Damages**.

B.      *The 2017 Lexington Law Policy*

43.      Indian Harbor sold Lexington Law Professional Liability Insurance Policy No. LPN9035365, for the period of July 14, 2017 to July 14, 2018 (the "2017 Lexington Law Policy").

44.      The 2017 Lexington Law Policy provides a $5 limit of liability for each **Claim**, subject to a $5 million aggregate limit of liability.

45.      **Claim** is defined to include "a formal civil administrative or regulatory proceeding . . . commenced by the filing or entry of a formal order of investigation or similar document."

46.      **Damages** means "a monetary judgment, award or settlement, including any punitive or exemplary damages if insurable under the applicable law most favorable to the insurability" of such damages.

47.      The Fines and Penalties Endorsement to the 2017 Lexington Policy increases the policy's each claim and aggregate Limits of Liability for **Fines/Penalties Damages** to $3,000,000.

C.    *The 2017 CreditRepair.com Policy*

48.    Indian Harbor sold CreditRepair.com Professional Liability Policy No. LPN9035364, for the period of July 14, 2017 to July 14, 2018 (the "2017 CreditRepair.com Policy").

49.    The 2017 CreditRepair.com Policy provides a $5 limit of liability for each **Claim**, subject to a $5 million aggregate limit of liability.

50.    **Professional Services** is defined to include all "credit repair services."

51.    The 2014 Lexington Law Policy, the 2017 Lexington Law Policy and the 2017 CreditRepair.com Policy are referred to collectively as the "AXA XL Policies."

**IV.    The Insurance Claim**

52.    Lexington Law and CreditRepair.com each provided timely notice to AXA XL of the claims at issue.

53.    AXA XL has acknowledged that the *CFBP* Lawsuit potentially alleges a covered claim under both the 2014 Lexington Law Policy and the 2017 CreditRepair.com Policy.

54.    AXA XL has acknowledged that the Creditor Claims allege a potentially covered claim against Lexington Law under the 2017 Lexington law Policy.

55.    AXA XL has acknowledged that Catlin and Indian Harbor have a contractual duty to defend Lexington Law and CreditRepair.com in connection with the *CFPB* Lawsuit.

56.    AXA XL has acknowledged that Indian Harbor has a contractual duty to defend Lexington Law against the Creditor Claims.

57.    Nevertheless, AXA XL has, to date, failed to pay any of the Insureds' defense costs or to otherwise actually defend the Insureds in connection with the pending matters.

*A.*    *The CFPB Claim*

58.    Lexington Law provided notice of the October 3, 2014 CID to Catlin on
December 17, 2014.

59.    On January 28, 2015, Catlin responded to Lexington Law's notice, indicating that
the 2014 Lexington Law Policy defined "Claim" to include "a written demand for monetary or
non-monetary relief" or a "formal civil administrative or regulatory proceeding . . . commenced
by the filing of a formal order of investigation or similar document," but advised: "[t]o date, no
action has been taken against the Insured which would constitute a claim under Catlin's Policy.
Therefore, Catlin will treat this matter as a *potential claim*." (emphasis in original).

60.    On or about October 24, 2017, Lexington Law provided notice to AXA XL of the
September 13, 2017 NORA issued by the CFPB. On that same date, CreditRepair.com provided
notice to Indian Harbor under the 2017 CreditRepair.com Policy of the NORA issued to
Progrexion Holdings, Inc. and its subsidiaries, including CreditRepair.com.

61.    AXA XL responded to the Insureds' notice of the NORA's by letters dated
February 7, 2018, concluding that the NORA's were not Claims. Rather, AXA XL indicated it
would treat the Lexington NORA as a Potential Claim under the 2017 Lexington Policy, and the
NORA issued to CreditRepair.com as a Potential Claim under the 2017 CreditRepair.com Policy.

62.    On May 24, 2019, Lexington Law and CreditRepair.com provided notice to AXA
XL of the *CFPB* Lawsuit. The Insureds noted that they were represented by Goodwin Proctor,
LLP in connection with the lawsuit, and requested AXA XL's "agreement to such representation
and its immediate consent for [Lexington and CreditRepair.com] to incur attorneys' fees and
costs in defense of the action."

63.     AXA XL first responded to the Insureds' tender of the *CFBP* Lawsuit by letters dated July 16, 2019. Notwithstanding that an insurer's duty to defend is determined solely by the "four corners" of the underlying complaint, AXA XL asserted that it could not render a coverage determination in the absence of additional information relating to, among other things, the Insureds' responses to the CFPB's prior CID's, an explanation of pre-suit settlement discussions between the Insureds and the Bureau, and the insureds' analysis of the CFPB's allegations in the lawsuit. Moreover, AXA XL requested additional information relating to the Insureds' retention of Goodwin Proctor, including counsels' hourly rates and the size of the legal team.

64.     In response, Lexington Law and CreditRepair.com provided AXA XL with the names, rank and billing rates of the Goodwin Proctor lawyers retained to defend the *CFPB* action. AXA XL took no further action for eight months.

65.     Then, on May 15, 2020, AXA XL wrote to the Insureds and simply reiterated its prior request "for information concerning Goodwin Proctor's defense (e.g., hourly rates, size of legal team, budget, etc.)." AXA XL made this request even though information relating to Goodwin Proctor had been previously provided long before.

66.     On May 20, 2020, the Insureds, for the second time, provided AXA XL with details regarding the Goodwin Proctor legal team, including the members of the legal team and updated hourly rates. But rather than providing its consent to the Insureds' retention of Goodwin Proctor, AXA XL responded on May 27, 2020 – more than a year after the *CFPB* Lawsuit was filed –with a series of additional questions pertaining to why the Insureds' retained Goodwin Proctor (rather than a less expensive firm), including (a) why the Insureds did not use Troutman Sanders (who had previously defended Lexington in a series of unrelated TCPA class actions), "particularly when Goodwin Proctor's rates are more than double Troutman Sander's rates...,"

(b) what specialized experience does Goodwin Proctor have in CFPB litigation that a less expensive firm does not, (c) whether the Insureds considered other firms and what their rate proposals were; (d) what discussions the Insureds had with Goodwin Proctor regarding its fee proposal and whether the Insureds sought to negotiate a discount, and (e) why Goodwin Proctor's rates had increased between 2019 (when the Insureds first provided AXA XL with the rate information) and 2020 (when the Insureds provided updated rate information).

67.     To the extent any of the information requested by AXA XL on May 27, 2020 was relevant to the Insureds' request for consent to retain Goodwin Proctor, no explanation was provided for why AXA XL waited a year to request the information.  Nevertheless, Lexington Law and CreditRepair.com responded to these additional requests, advising that (a) Goodwin Proctor was selected because of the firm's experience in defending claims brought against businesses by the CFPB, (b) Goodwin Proctor had the most relevant litigation experience relating to the specific types of claims alleged by the *CFBP* Lawsuit, (c) the Insureds also considered Venable and Williams & Connolly for the *CFPB* Lawsuit, but their rates were similar if not higher than Goodwin Proctors, (d) and that the Insureds negotiated a 10% discount off Goodwin Proctor's rack rate and continues to request write-downs where warranted.[2]

68.     On September 11, 2020, AXA XL finally acknowledged its contractual duty to defend the Insureds in connection with the *CFPB* Lawsuit.  AXA XL recognized its duty to defend Lexington Law under the 2014 Lexington Policy and CreditRepair.com under the 2017 CreditRepair.com Policy.  Nevertheless, AXA XL still did not provide its consent to the

---

[2] Moreover, notwithstanding that AXA XL was obligated to defend Insureds against the CFPB Lawsuit based on the allegations contained within the four-corners of the underlying *CFPB* Lawsuit, and that AXA XL was in breach of its duty to defend, the Insureds, through the July 17 letter, provided AXA XL with voluminous materials produced in connection with the prior CID's and NORA's.

Insureds' retention of Goodwin Proctor. Rather, AXA XL asserted, for the first time
(approximately 15 months after the *CFPB* Lawsuit was served and over six years after initial
notice of the CFPB Claim), that both Lexington Law and CreditRepair.com were obligated to
retain a different law firm (*i.e.*, not Goodwin Proctor) due to a supposed conflict of interest.

69.     Goodwin Proctor subsequently advised AXA XL that there was no conflict of
interest between the parties.

70.     Ultimately, despite acknowledging that it owes Lexington Law and
CreditRepair.com a duty to defend against the *CFPB* Lawsuit, and having received invoices
supporting the Insureds' defense costs incurred in connection with the claim, AXA XL has
neither defended the Insureds in connection with the matter nor otherwise paid the Insureds'
costs of defense.

71.     As a result, the Insureds have been forced to bring this action for declaratory
judgment, breach of contract and bad faith against AXA XL to enforce their rights to coverage for
the CFPB Claim under the policies.

B.      *The CBE Group and Ad Astra Lawsuits*

72.     Lexington Law provided notice to AXA XL of *Ad Astra* and *CBE Group* on June
18, 2018.

73.     On August 29, 2018, Indian Harbor agreed to provide Lexington Law a defense to
*Ad Astra* under a reservation of rights. A similar reservation of rights letter was issued the
following day with respect to *CBE Group*.

74.     On October 10, 2018, Lexington Law provided AXA XL with an update on the
status of *Ad Astra*, including a copy of a recently issued scheduling order and an early settlement
demand from plaintiff's counsel. Lexington Law advised that it was being represented in

connection with the action by the law firm of Quintairos, Prieto, Wood & Boyer, PA,

("Quintairos, Prieto") and requested AXA XL's "prompt consent to such representation."

Lexington Law concluded, "Please let us know immediately if you would like to discuss

Lexington's response with underlying counsel" and if "additional information is required at this

time."

75.     AXA XL did not respond to this October 10, 2018 letter.

76.     On May 31, 2019, Lexington  Law provided AXA XL with an update on *CBE*

*Group*.  Lexington noted that a pre-trial conference had been held and that a trial date had been

set for June 24, 2019.  Lexington Law advised that it continued to be represented by Quintairos,

Prieto, and offered to provide AXA XL with further information regarding the status of the

matter, "including putting [AXA XL] directly in touch with defense counsel."  Lexington Law

inquired, "Please let us know your availability for a call to further discuss this claim."

77.     AXA XL did not respond to the May 31, 2019 letter.

78.     Indeed, AXA XL went silent on the Creditor Claims until June 2020 when AXA

XL simply wrote, "Please provide updates for the below mentioned matters.  Thank you."

79.     Lexington Law provided AXA XL with a status update on both lawsuits.

Lexington Law also notified AXA XL that it had recently retained the law firm of Williams &

Connolly in defense of the actions, replacing Quintairos, Prieto, and provided AXA XL with the

names and hourly billing rates of the respective lawyers.  Lexington Law requested AXA XL's

consent to counsel.

80.     On December 1, 2020, having still received no response from AXA XL,

Lexington Law provided AXA XL with copies of defense invoices incurred in connection with

defense of *Ad Astra* and *CBE Group* and demanded reimbursement of its attorneys' fees and

costs incurred to date. Lexington Law once again reiterated its offer to arrange a call between AXA XL and its defense counsel to discuss Lexington Law's defense of the matters.

81.     Apparently, Lexington Law's submission of invoices and demand for reimbursement finally caught AXA XL's attention. AXA XL responded on January 7, 2021, affirming its determination that *Ad Astra* and *CBE Group* triggered its duty to defend. However, AXA XL disclaimed any obligation to actually reimburse Lexington Law's defense costs, declaring: "AXA XL has not provided written consent, and any defense costs incurred to date are at Lexington's 'personal cost.'"  AXA XL further asserted that Lexington Law would have to retain different defense counsel (*i.e.*, not Williams & Connolly) to defend against the actions because of conflicts of interest.

82.     Although Indian Harbor concedes that *Ad Astra* and *CBE Group* are potentially covered claims under the 2017 Lexington Law Policy that trigger its duty to defend, and despite Lexington Law's requests that Indian Harbor consent to its retention of counsel, Indian Harbor has refused to defend Lexington Law in connection with the matters or to otherwise pay or reimburse any of Lexington Law's attorneys' fees or costs incurred in connection with the lawsuits.

83.     As a result, Lexington has been forced to bring this action for declaratory judgment, breach of contract and bad faith against AXA XL to enforce its rights to coverage for *Ad Astra* and *CBE Group* under the 2017 Lexington Law Policy.

### FIRST CAUSE OF ACTION

**(Declaratory Relief Against Catlin and Indian Harbor – Duty to Defend and Pay All Defense Expenses in Connection with the CFPB Claim)**

84.   The Insureds repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if set forth fully herein.

85.   The 2014 Lexington Law Policy provides that Catlin has the right and duty to defend Lexington Law against any Claim to which the 2014 Lexington Policy applies.

86.   Likewise, the 2017 CreditRepair.com Policy provides that Indian Harbor has the right and duty to defend CreditRepair.com against any Claim to which the 2017 CreditRepair.com Policy applies.

87.   The October 2014 CID and the September 2017 NORA served on Lexington Law, including the CFPB's ensuing investigation of Lexington Law, constitutes a Claim under the 2014 Lexington Policy.

88.   Likewise, the September 2017 NORA served on Progrexion Holdings, Inc. and its subsidiaries, including CreditRepair.com, and the CFPB's ensuing investigation of CreditRepair.com, constitutes a Claim under the 2017 CreditRepair.com Policy.

89.   Catlin was obligated to defend Lexington Law or to otherwise pay for Lexington Law's attorneys' fees and costs incurred in connection with the CFPB Claim.

90.   Indian Harbor was obligated to defend CreditRepair.com or to otherwise pay for CreditRepair.com's attorneys' fees and costs incurred in connection with the CFPB Claim.

91.   *CFPB* Lawsuit is deemed a Claim made during the period of the 2014 Lexington Policy and during the 2017 CredirRepair.com Policy.

92.   Catlin has a duty to defend Lexington against the *CFPB* Lawsuit under the 2014 Lexington Law Policy, and Indian Harbor has a duty to defend CreditRepair.com under the 2017 CreditRepair.com Policy.

93.     Both policies required that AXA XL defend the Insureds against the CFPB Claim by retaining counsel to represent the Insureds (with the Insureds' consent) or by paying/reimbursing Claim Expenses incurred by the Insureds' chosen defense counsel, subject to the policies' limits of liability and applicable self-insured retention.  But neither Catlin nor Indian Harbor did either and, therefore, breached their contractual duty to defend Lexington Law and CreditRepair.com.

94.     Catlin's and Indian Harbor's defense obligations are each subject to the Policies' $5,000,000 limits of liability.

95.     Any condition of the Policies requiring that the Insureds secure AXA XL's consent to retain defense counsel or to incur Claims Expenses in connection with the CFPB Claim was waived by AXA XL or otherwise is unenforceable as a result of AXA XL's conduct in this matter, including the insurers' breach of their duty to defend.

96.     AXA XL has waived or is otherwise estopped from enforcing any condition of the Policies requiring that the Insureds secure AXA XL's consent to retain defense counsel or to incur Claims Expenses in connection with the CFPB Claim because of insurers' inaction and/or failure to timely respond to the Insureds' requests.

97.     AXA XL's silence and/or inaction constitutes consent to the Insureds' retention of defense counsel and/or the Claims Expenses incurred by the insureds in connection with the CFPB Claim.

98.     Any conditions to coverage under the policies was satisfied by the Insureds' or may not be enforced by AXA XL because of the insurers' actions in connection with the claims.

99.     Under Utah Code Ann. § 78B-6-401, *et seq.*, there is an actual and justiciable controversy between the Insureds and AXA XL with respect to AXA XL's duty to defend

Lexington Law and CreditRepair.com against the CFPB Claim under the 2014 Lexington Law Policy and the 2017 CreditRepair.com Policy.

100. A declaratory judgment establishing the parties' rights with respect to that duty to defend would terminate the controversy and dispute among the parties as to AXA XL's duty to defend.

101. Pursuant to § 78B-6-401, *et seq.*, and the terms of the 2014 Lexington Law Policy and the 2017 CreditRepair.com Policy, the Insureds are entitled to a declaration of their rights and AXA XL's duties under the policies, including a declaration not limited to the following issues:

(a)     that the October 2014 CID and the September 2017 NORA served on Lexington Law, including the CFPB's ensuing investigation of Lexington Law, constitutes a Claim under the 2014 Lexington Policy;

(b)     that the September 2017 NORA served on Progrexion Holdings, Inc. and its subsidiaries, including CreditRepair.com, and the CFPB's ensuing investigation of CreditRepair.com, constitutes a Claim under the 2017 CreditRepair.com Policy;

(c)     that AXA XL was obligated to defend, or pay the defense costs of, Lexington Law and CreditRepair.com or to otherwise pay for the Insureds' attorneys' fees and costs incurred in connection with the CFPB Claim and breached that duty;

(d)     that AXA XL is obligated to reimburse the Insureds' reasonable attorneys' fees and costs incurred in defense of the *CFPB* Lawsuit and to defend, or pay the defense costs of, Lexington Law and CreditRepair.com in connection with the matter going forward, subject only to the policies' applicable limits of liability.

## SECOND CAUSE OF ACTION

**(Declaratory Relief Against Indian Harbor -- Duty to Defend and Pay Lexington Law's Defense Expenses in Connection with the Creditor Claims)**

102.     The Insureds repeat and reallege the allegations set forth in the preceding paragraphs of this Complaint as if set forth fully herein.

103.     The 2017 Lexington Law Policy provides that Indian Harbor has the right and duty to defend Lexington Law against any Claim to which the 2017 Lexington Policy applies.

104.     Both *Ad Astra* and *CBE Group* triggered Indian Harbor's duty to defend Lexington Law in connection with the lawsuits under the 2017 Lexington Law Policy.

105.     The 2017 Lexington Law Policy requires that Indian Harbor defend Lexington Law against *Ad Astra* and *CBE Group* by retaining counsel to represent Lexington Law (with Lexington Law's consent) or by paying/reimbursing Claim Expenses incurred by Lexington Law's chosen defense counsel, subject to the policy's limit of liability and applicable self-insured retention.  But Indian Harbor did neither and, therefore, breached its contractual duty to defend Lexington Law.

106.     Any condition of the policy requiring that Lexington Law secure Indian Harbor's consent to retain defense counsel or to incur Claims Expenses in connection with *Ad Astra* or *CBE Group* was waived by Indian Harbor or otherwise is unenforceable as a result of Indian Harbor's conduct in this matter, including its breach of its duty to defend.

107.     *Ad Astra* and the *CBE Group* arise out of the same act or omission or out of Interrelated Acts or Omissions and constitute a single Claim under the policy.

108.     Neither *Ad Astra* nor *CBE Group* constitutes a Claim seeking Fines/Penalties Damages and, accordingly, Indian Harbor's duty to defend Lexington Law in connection with

the Claim is subject to a single $100,000 self-insured retention and the policy's $5,000,000 limit of liability.

109.   Under Utah Code Ann. § 78B-6-401, *et seq.*, there is an actual and justiciable controversy between Lexington Law and Indian Harbor with respect to Indian Harbor's duty to defend Lexington Law against the Creditor Claims under the 2017 Lexington Law Policy.

110.   A declaratory judgment establishing the parties' rights with respect to that duty to defend would terminate the controversy and dispute among the parties as to Indian Harbor's duty to defend.

111.   Pursuant to § 78B-6-401, *et seq.*, and the terms of the 2017 Lexington Law Policy, Lexington Law is entitled to a declaration of its rights and Indian Harbor's duties under the policy, including a declaration not limited to the following issues:

(a)    that Indian Harbor has an obligation to defend, or pay the defense costs of, Lexington Law in connection with *Ad Astra* and the *CBE Group* and has breached that duty;

(b)    that *Ad Astra* and the *CBE Group* constitute or are otherwise deemed a single Claim under the policy;

(c)    that Indian Harbor's duty to defend Lexington Law in connection with *Ad Astra* Action and the *CBE Group* is subject to a single $100,000 retention;

(d)    that the policy's $5,000,000 limit of liability is applicable to Indian Harbor's duty to defend Lexington Law in connection with *Ad Astra* and *CBE Group*;

(e)    that Indian Harbor is obligated to reimburse Lexington Law's reasonable attorneys' fees and costs incurred in defense of *Ad Astra* and *CBE Group* and to defend, or pay for the defense of, Lexington Law in connection with the matters going forward, subject only to the policy's applicable limit of liability.

## THIRD CAUSE OF ACTION

### (Breach of Contract Against Catlin and Indian Harbor – Duty to Defend and Pay All Defense Expenses Incurred in Connection With the CFPB Claim)

112.    ' The Insureds repeat and reallege the allegations set forth in preceding paragraphs of this Complaint as if set forth fully herein.

113.    The 2014 Lexington Policy and the 2017 CreditRepair.com Policy are valid and enforceable contracts between the respective parties.

114.    Lexington Law and CreditRepair.com performed all of their obligations under the 2014 Lexington Policy and the 2017 CreditRepair.com Policy, including without limitation payment of all of the premiums due under those policies.

115.    Lexington Law and CreditRepair.com timely tendered the CFPB Claim for coverage under AXA XL's policies.

116.    The CFPB Claim constitutes a Claim under the 2014 Lexington Law Policy and the 2017 CreditRepair.com Policy.

117.    The CFPB Claim triggers AXA XL's obligation to defend Lexington Law and CreditRepair.com, or to otherwise pay for the Insureds' attorneys' fees and costs incurred in connection with the CFPB Claim, under the 2014 Lexington Policy and the 2017 CreditRepair.com Policy.

118.    Prior the CFBP Lawsuit, AXA XL wrongfully denied coverage.

119.    AXA XL wrongly denied coverage for the CFPB Lawsuit by failing to defend the Insureds and/or refusing to pay any of Lexington Law and CreditRepair.com's legal defense costs in breach of the policies.

120.     Any conditions to coverage under the policies have been satisfied or have been waived or are otherwise unenforceable.

121.     Lexington Law and CreditRepair.com incurred attorneys fees in bringing and prosecuting this action, which are foreseeable damages to AXA XL's breach of contract.

122.     As a direct and proximate result of the breaches by AXA XL of its duty to defend Lexington Law and CreditRepair.com in connection with the CFPB Claim, the Insureds have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

**(Breach of Contract Against Indian Harbor – Duty to Defend and Pay Defense Expenses Incurred by Lexington Law in Connection with the Creditor Claims)**

123.     The Insureds repeat and reallege the allegations set forth in preceding paragraphs of this Complaint as if set forth fully herein.

124.     The 2017 Lexington Policy is a valid and enforceable contract between Lexington Law and Indian Harbor.

125.     Lexington Law performed all of its obligations under the 2017 Lexington Policy, including without limitation payment of all of the premiums due under that policy.

126.     Lexington Law timely tendered *Ad Astra* and *CBE Group* for coverage under the 2017 Lexington Policy.

127.     The allegations in *Ad Astra* and *CBE Group* trigger Indian Harbor's obligation to defend Lexington Law or to otherwise pay its attorneys' fees and costs incurred in connection with the lawsuit under the 2017 Lexington Law Policy.

128.     Indian Harbor has denied or otherwise refused to acknowledge its duty to defend Lexington Law in breach of the 2017 Lexington Law Policy.

129.    Any conditions to coverage under the policy have been satisfied or have been waived or are otherwise unenforceable.

130.    Lexington Law and CreditRepair.com incurred attorneys' fees in bringing and prosecuting this action, which are foreseeable damages to AXA XL's breach of contract.

131.    As a direct and proximate result of the breach of its duty to defend Lexington Law in connection with *Ad Astra* and *CBE Group*, the Lexington Law has been damaged in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION

**(Against Catlin and Indian Harbor – Common Law Bad Faith and Breach of the Covenant of Good Faith and Fair Dealing)**

132.    The Insureds repeat and reallege the allegations set forth in preceding paragraphs of this Complaint as if set forth fully herein.

133.    As alleged above, Catlin and Indian Harbor each agreed under the terms and conditions of their respective Policies to defend or otherwise pay the Insureds' defense costs in connection with claims that are potentially covered under the policies.

134.    Implied in every insurance policy is a covenant that the insurance company will act in good faith and deal fairly with its insured, that the insurance company will do nothing to interfere with the right to receive benefits under the policy that the insurance company will diligently investigate the facts to determine whether or not a claim is valid and will fairly evaluate the claim and will act promptly and reasonably in paying or rejecting a claim.

135.    AXA XL has violated its duty of good faith and fair dealing owed to Lexington Law and to CreditRepair.com by, among other conduct, (a) refusing to promptly acknowledge the duty to defend the *CFPB* Claim provided under their respective Policies without reasonable

justification, (ii) repudiating or otherwise refusing their respective duty to defend Lexington Law and CreditRepair.com in connection with the *CFPB* Claim for reasons that are manifestly unreasonable under the terms and conditions of their Policies, (iii) failing to timely and adequately respond to the Insureds' requests for consent to retain counsel and to incur defense costs in connection with the CFPB Claim, and later asserting that the costs were incurred at the Insureds' personal costs; (iv) failing to timely and adequately respond to the Lexington Law's requests for consent to retain counsel and to incur defense costs in connection with the Creditor Claims, and later asserting that the costs were incurred at Lexington Law's personal cost; and (v) refusing to consent to Insureds' retained counsel on the basis that a conflict of interests precludes the Insureds from being represented by their chosen counsel in the absence of any reasonable basis for such contention. AXA XL has done so for the purpose of consciously, purposefully, and maliciously withholding policy benefits and placing its own interests above those of the Insureds for the purpose of saving money which should have been paid for Lexington Law's and CreditRepair.com's defense under the terms and conditions of the Policies.

136.    The actions and inactions of AXA XL, as set forth above, are without any reasonable justification, were undertaken in bad faith, and constitute a breach of its duty of good faith and fair dealing. As a result of this breach of their duty of good faith, Lexington Law and CreditRepair.com are entitled to an award of compensatory damages against AXA XL, as well as punitive damages and attorneys' fees.

## CIVIL TIER

Pursuant to Rule 26(c)(3) of the Utah Rules of Civil Procedure, Lexington Law and CreditRepair.com's damages are such as to qualify as a Tier 3 case for purposes of discovery.

## PRAYER FOR RELIEF

{00537401.DOCX /}                                24

WHEREFORE, Lexington Law and CreditRepair.com pray for relief as follows:

(a)     On the First Cause of Action and Second Cause of Actions, the Insureds request that the Court determine and resolve this controversy by entering a Declaratory Judgment on the identified controversies as set forth therein and award plaintiffs all damages that flow from such a ruling;

(b)     On the Third Cause of Action, Lexington Law and Credit Repair.com request that the Court enter judgment against Catlin and Indian Harbor for actual money damages in an amount to be determined at trial, for breaches of their respective duties to defend under the Policies, including pre-judgment and post-judgment interest as allowed by common and statutory law, attorneys' fees and costs incurred in bringing this action, and such other and further relief as the Court deems just and proper;

(c)     On the Fourth Cause of Action, Lexington Law requests that the Court enter judgment against Indian Harbor and for actual money damages in an amount to be determined at trial, for its breach of duty to defend under the 2017 Lexington Policy, including pre-judgment and post-judgment interest as allowed by common and statutory law, attorneys' fees and costs incurred in bringing this action, and such other and further relief as the Court deems just and proper;

(d)     On the Fifth Cause of Action Lexington Law and Credit Repair.com request that the Court enter judgment against AXA XL for actual money damages in an to be determined at trial for Catlin's and Indian Harbor's breaches of the duty of good faith and fair dealing, including compensatory damages, punitive damages, pre-judgment and post-judgment

interest as allowed by common, attorneys' fees and costs incurred by the Insureds in bringing this action, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Utah Rule of Civil Procedure 38(b), Insureds demand a trial by jury on all issues so triable.

COHNE KINGHORN, P.C.

By:   /s/ George Hofmann
      George Hofmann
      Joshua K. Peterman
      111 East Broadway, 11th floor
      Salt Lake City, UT 84111
      Telephone: (801) 363-4300
      Fax: (801) 363-4378

MILLER FRIEL, PLLC

By:   /s/ Mark E. Miller
      Mark E. Miller (*pro hac vice* admission
      forthcoming)
      Tab R. Turano (*pro hac vice* admission
      forthcoming)
      2445 M Street, Suite 910
      Washington, DC  20037
      Tel: (202) 760-3160
      Fax: (202) 459-9537